IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSEPH EUGENE DAMRILL,

        Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner, Social Security Administration,

        Defendant.

CV 07-1634-ST

FINDINGS AND RECOMMENDATION

STEWART Magistrate Judge,

    Plaintiff, Joseph Damrill ("Damrill"), challenges the Commissioner's decision denying his application for disability insurance benefits and supplemental security income under Title II and XVI of the Social Security Act. This court has jurisdiction under 42 USC § 405(g). Based on a review of the entire record, this court concludes that the ALJ's decision is supported by substantial evidence, finds no merit to the arguments raised by Damrill, and concludes that the ALJ's decision should be affirmed.

1 - FINDINGS AND RECOMMENDATION

**THE ALJ'S FINDINGS**

The administrative law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20 CFR § 404.1520. *Bowen v. Yuckert*, 482 US 137, 140 (1987).

At step one, the ALJ found that Damrill had not engaged in substantial gainful activity at any time relevant to his decision. AR 19, Finding 2;[1] *see* 20 CFR §§ 404.1520(b), 416.920(b). At step two, the ALJ found that Damrill had severe limitations of cervical strain, chronic; chronic low back pain; and a history of right rotator cuff injury with a continuing diffuse distribution of pain. AR 19, Finding 3; *see* 20 CFR §§ 404.1520(c), 416.920(c). At step three, the ALJ found that these impairments did not meet or equal an impairment in the Listing of Impairments. AR 22, Finding 4; *see 20* CFR §§ 404.1520(a)(4)(iii); 404.1520(d), 416.920(a)(4)(iii), 416.920(d).

The ALJ then determined that Damrill had the residual functional capacity ("RFC") to perform a limited range of light exertion work activity limited to simple routine repetitive work not involving repetitive pushing, pulling, lifting or reaching with the right shoulder, or working overhead with the right arm. AR 22, Finding 5; *see* 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.   At step four, the ALJ found that Damrill had no past relevant work. AR 26, Finding 6; *see* 20 CFR §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). Based on the RFC and the testimony of a vocational expert ("VE"), the ALJ concluded at step five that Damrill retained the ability to perform other work existing in significant numbers in the national economy, such as a small products assembler or cashier. AF 26-27, Finding 10; 20 CFR §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g). As a result, the ALJ found Damrill not disabled under the Act.

---

[1] AR refers to page numbers in the administrative record filed March 19, 2008 (docket #8).

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004). This court must consider the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998). The reviewing court may not substitute its judgment for that of the Commissioner. *Id,* citing *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 882 (9th Cir 2006); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Batson*, 359 F3d at 1193.

**ISSUES RAISED BY DAMRILL**

Damrill contends the ALJ: (1) failed to fully develop the record with regard to his learning disabilities and psychological impairment; and (2) failed to identify the *Dictionary of Occupational Titles* ("DOT") numbers of the employment identified by the vocational expert at step five. Damrill asserts these errors led the ALJ to erroneously conclude he remains capable of performing substantial gainful employment.

**FINDINGS**

**I. Background**

On April 28, 2005, Damrill filed applications for benefits alleging disability beginning on April 1, 2003, at age 36 due to chronic back and right shoulder pain resulting from an on-the-job injury to his shoulder in September 1995 and to his back in 2003. AR 65-67, 68-70, 86, 95, 194, 248-50. He met the insured status requirements for a claim through December 31, 2003. AR 17,

29, 31, 247. Thus, to prevail on his claim, he must establish that he became disabled on or before that date. 42 USC § 423(a)(1)(A). *See Tidwell v. Apfel,* 161 F3d 599, 601 (9th Cir 1998).

Damrill's applications were denied initially (AR 17, 34-38) and on reconsideration. AR 17, 45-47, 48-50. A hearing was held before the ALJ on March 7, 2006 (AR 17, 244-93), culminating in the ALJ's decision dated September 26, 2006. AR 17-27. On August 29, 2007, the Appeals Council denied Damrill's request for review, making the ALJ's decision the Commissioner's final decision. Tr 4-7; *see* 20 CFR §§ 404.981, 416.1481, 422.210.

The ALJ did not discuss in detail the medical records concerning Damrill's treatment history prior to his alleged onset date of April 1, 2003. AR 20. The ALJ did give a detailed synopsis of the treatment Damrill received after that date which is consistent with the medical evidence in the record. AR 20-21. Because Damrill does not challenge these portions of the ALJ's decision, this court will not recite the medical record, except to note that Damrill has received ongoing treatment for impairments sufficient to support the limitations identified by the ALJ, namely a restriction to light duty with no repetitive pushing, pulling, lifting or reaching with the right shoulder, or working overhead. AR 25, 286.

Damrill does not specifically challenge the ALJ's findings at steps one through four. Instead, Damrill contends that the ALJ erred by failing to develop the record and by failing to insist that the VE specifically provide the DOT numbers of the jobs she identified, issues to which this court now turns.

///

## II. Failure to Develop the Record

Damrill alleges that the ALJ erred by failing to develop the record with regard to either his learning disabilities or his psychological impairment. Damrill contends that the ALJ should have ordered further testing on both of those issues.

### A. Legal Standard

"In Social Security Cases, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F2d 441, 443 (9th Cir 1983). This duty exists even when the claimant is represented by counsel. *Id*; *Smolen v. Chater*, 80 F3d 1273, 1288 (9th Cir 1996). However, the burden is on the claimant to prove that he is disabled. Thus, the ALJ's duty to develop the record is triggered only when the evidence is ambiguous or the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F3d 453, 459-60 (9th Cir 2001).

### B. Learning Disability

Damrill first argues that the ALJ erred by failing to fully develop the record with regard to an alleged learning disability. Without further explanation, Damrill testified that when he "was a kid," he was diagnosed with Attention Deficit Disorder ("ADD") and began taking "pharmaceutical speed." AR 271. His mother added that he was diagnosed with ADD when he was about three years old. AR 279-81. He took prescription medication for his ADD, but eventually the doctors stopped prescribing it for him. AR 280. Damrill asserts that nothing about this diagnosis made it into his official records because his mother did not want it to affect his ability to get educational services. AR 271.

Damrill also points out that his grades in elementary school were Ds and Fs, with the exception of an A in Drama. AR 136. Based on the combination of a diagnosis of ADD and poor

grades, Damrill contends that the ALJ should have ordered additional psychological testing to determine his IQ and possibly enable him to meet Listing 12.05 (Mental Retardation), or determine that he is illiterate and, therefore, impaired in his ability to perform any of the jobs identified by the VE.

The ALJ found nothing in the record to substantiate an ADD diagnosis. AR 24. He accurately chronicled Damrill's educational records, noting the substantial decline in Damrill's grades in seventh and eighth grades which contrasted with his promotion to the ninth grade. *Id*. Finally, when making his RFC assessment, the ALJ included a restriction to "simple routine repetitive work" to take into account Damrill's "limited education and possible decreased ability to concentrate due to the possible side effects from his medications." *Id*.

The testimony of Damrill and his mother related to an alleged diagnosis some 30 years before the alleged onset date of Damrill's disability. Moreover, nothing in the record suggests that his reasons for not attending high school were in any way connected to that diagnosis. To the contrary, his testimony suggests just the opposite. AR 266 (relating an incident during his freshman year in which "two police officers, the principal and vice principal escorted [him] off the property and told [him] never to come back"). In sum, this court finds nothing sufficiently ambiguous or incomplete about the record to have triggered any duty by the ALJ to further develop it. Accordingly, this challenge to the ALJ's decision should be rejected.

///

///

### C. Psychological Impairment

Next, Damrill asserts that the ALJ erred by failing to develop the record concerning an alleged psychological impairment. Damrill testified that he was depressed due to his physical limitations. AR 258-59, 264. He cites medical records from July 9, 2005 (AR 176-79, noting lumbar extension of only 10 degrees), and August 23, 2005 (AR 233, noting paraspinal tenderness bilaterally in the lumbar area), as evidence of an objective basis for his complaints of back pain. He then contrasts those records with an entry 10 years previously, from October 4, 1995 (AR 193), in which a doctor treating him for neck and shoulder pain noted the following:

> Again, a seeming over-reaction to light palpatation of the paracervical muscles and trapezius, as will as the RIGHT bicipital tendon, even on testing his biceps, triceps, and brachial radialis, the patient winces and makes lots of expressions of pain. I really believe that these should not give him any discomfort whatsoever. So I think I have somewhat of a hysterical presentation, in addition to, what I believe to be, some real discomfort.

AR 193 (emphasis in original).

Based on the fact that the record contains evidence of an objective basis for back symptoms, contrasted with a decade-old entry that he presented as "hysterical" when seeking treatment for neck and shoulder pain, Damrill concludes that the ALJ should have remanded the case for further psychological testing to root out a possible unidentified unconscious psychological condition. This argument does not pass muster.

First, nothing even remotely connects Damrill's "hysterical" presentation of 1995 to his alleged disability in 2003. Second, Damrill did not seek benefits based on any hint of a psychological impairment, nor do any of the treatment records support any such impairment. Third, this evidence falls far short of the sort of ambiguity or inadequacy in the record which will trigger

7 - FINDINGS AND RECOMMENDATION

a duty by the ALJ to investigate further. In short, this evidence again provides no basis on which to overturn the ALJ's decision.

### III. Failure to Identify DOT Numbers

Finally, Damrill contends that the ALJ improperly relied on the testimony of the VE because the VE did not expressly state the DOT numbers of the jobs which she identified.

#### A. Legal Standard

The Commissioner relies primarily on the DOT for information about the requirements of work. 20 CFR Part 404, Subpt P, App 2 § 200.00(b); SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). An ALJ may rely on the testimony of a VE for additional guidance, but the information should be consistent with the occupational information in the DOT. SSR 00-4p, 2000 WL 1898704 at *2. When an apparent conflict exists between the information in the DOT and the evidence provided by the VE, the ALJ must elicit a reasonable explanation and resolve the conflict before relying on the VE's testimony to find the claimant not disabled. *Id.* The ALJ has an affirmative responsibility to ask about any possible conflict between the evidence given by the VE about the requirements of an occupation and the information in the DOT. *Id* at *4. An ALJ may rely on expert testimony which contradicts the DOT, if the record contains persuasive evidence to support the deviation. *Johnson v. Shalala*, 60 F3d 1428, 1435 (9th Cir 1995).

#### B. VE Testimony and DOT Numbers of Identified Jobs

At the hearing, the ALJ asked the VE to consider a hypothetical person of Damrill's age, education, work experience, restricted to medium work, restricted from repetitive or prolonged use of the right arm for pushing or pulling activities, and no overhead working with the right arm. AR 286. The VE testified that such a person could perform jobs as a housekeeper, security guard,

8 - FINDINGS AND RECOMMENDATION

and service station attendant. AR 286-87. When the exertional level was reduced to a restriction to light work, the person could still work as a housekeeper or security guard, and also as a small products assembler or cashier. AR 287-88. Although the VE did not specify the DOT number for any of these jobs, each of them appears to relate to a specific DOT number based on the job title of those positions. *See, e.g.*, DOT 211.462-010 ("Cashier II"), 321.137-010 ("Housekeeper"), 372.667-034 ("Guard, Security"), 706.684-022 ("Assembler, Small Products I"), 915.467-010 ("Automobile Service-Station Attendant" with Alternate Title "Service-Station Attendant"). Of those jobs, the VE testified that neither the housekeeping job the security guard job require fine acuity with the hands. AR 289.

The ALJ accurately identified the skill and exertion levels (unskilled, light exertion) of a small products assembler (DOT 706.684-022) and cashier (DOT 211.462-010) and relied on the VE's information concerning the number of those jobs available in the national economy for those jobs. AR 27, 287-88. He also specifically found no conflict between the VE's testimony and the information in the DOT. AR 27.

Conceding that the failure to inquire might have been harmless, Damrill nevertheless contends that the ALJ's decision is without proper documentation based on the failure of the VE or the ALJ to cite the DOT numbers. However, Damrill does not address the Commissioner's argument on this point, does not identify any particular inconsistency between the two DOT numbers given in the Commissioner's brief and the VE's testimony, and does not give any reason why those particular jobs are inconsistent with his RFC. Based on a review of the entire record, this court agrees that the ALJ's failure to specifically identify the DOT numbers that correspond to the

jobs identified by the VE was harmless, and this court finds no basis to reverse or remand the ALJ's decision based on this technical oversight.

## RECOMMENDATION

Based on the foregoing, the court should AFFIRM the Commissioner's decision.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due September 19, 2008. If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 2nd day of September, 2008.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge